# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| LaMonte Rydell Martin,<br><br>              Petitioner,<br><br>v.<br><br>Jessica Symmes, Warden, Oak Park<br>Heights Facility, Minnesota,<br><br>             Respondent. | Case No. 10-cv-4753 (SRN/TNL)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Zachary A. Longsdorf, Longsdorf Law Firm, PLC, 10390 39th Street North, Suite 3, Lake Elmo, Minnesota 55042, for Petitioner.

Lee W. Barry and David C. Brown, Hennepin County Attorney's Office, 300 South Sixth Street, Suite C-2000, Minneapolis, Minnesota 55487, on behalf of Respondent.

Matthew Frank, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, St. Paul, MN 55101-2134, on behalf of Respondent.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the undersigned United States District Court Judge for consideration of Petitioner LaMonte Rydell Martin's Objections [Doc. No. 30] to United States Magistrate Judge Tony N. Leung's January 7, 2013, Report and Recommendation ("R & R") [Doc. No. 29]. The Magistrate Judge recommended that Petitioner's 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus [Doc. No. 1] be denied, the action be dismissed with prejudice, and a Certificate of Appealability be granted solely as to Petitioner's Eighth Amendment challenge to his sentence (as stated in Ground 2 of his Petition). (R & R at 51

[Doc. No. 29].)  For the reasons set forth below, the Court adopts nearly all of the

Magistrate Judge's recommendations in the R & R, with the exception of his denial of a

Certificate of Appealability as to Petitioner's Batson claim (as stated in Ground 2 of his

Petition).  Petitioner's objections are, therefore, overruled except as to that issue.

## II.    BACKGROUND

The factual and procedural background of Petitioner's case is well documented in the

Magistrate Judge's R & R and is incorporated herein by reference.[1]  According to Petitioner,

the facts giving rise to this case are as follows:

> Christopher Lynch was murdered in the back yard of a home located at 626
> N. Thomas Avenue, in north Minneapolis on the evening of May 3, 2006.
> Mr. Lynch was walking with his cousin Jermaine Mack-Lynch toward the
> home of Mr. Mack-Lynch's brother, Charles Pettis, when, Mr. Mack-Lynch
> testified[,] a white car drove slowly past.  Two assailants exited the white car
> and chased Mr. Lynch and Mr. Mack-Lynch . . . . Mr. Mack-Lynch ran . . . to
> the front door of 701 N. Thomas Avenue where he informed his brother
> Charles Pettis that he and Mr. Lynch were being chased. . . . As Mr. Lynch
> reached the backyard of 626 N. Thomas Ave[.], the two assailants caught up
> with him and shot him between 11 and 15 times.  After the shooting stopped,
> the white car reappeared and the two shooters got into the car and left the
> scene.  Paramedics arrived at the scene within minutes of the shooting taking
> place and Mr. Lynch was removed [from] the scene by ambulance.  He was
> pronounced dead upon his arrival at the hospital.

(Petitioner's Mem. of Law in Supp. of Pet. for Writ of Habeas Corpus by a Person in State

Custody Pursuant to 28 U.S.C. § 2254 ("Petr's Habeas Mem.") at 1–2 [Doc. No. 6].)

Petitioner was later indicted for the first-degree, premeditated murder of Lynch and on the

charge of crime committed to benefit a gang.  State v. Martin, 773 N.W.2d 89, 95 (Minn.

---

[1]    The Court recites background facts only to the extent necessary to rule on
Petitioner's objections.

2009).  Petitioner was seventeen years old at the time.  Id. at 99.  Cornelius Jackson and

Jonard McDaniel were also indicted for Lynch's murder.  Id. at 95.

Petitioner and Jackson were tried together.  Id.  The jury found Petitioner guilty of

both first-degree, premeditated murder under Minn. Stat. § 609.185(a)(1) (2008) and crime

committed for the benefit of a gang under Minn. Stat. § 609.229, subd. 2 (2008).  Id.  The

trial court entered judgment of conviction on the murder conviction only and sentenced

Petitioner to life in prison without the possibility of release.  Id.

Petitioner filed a direct appeal of his conviction and sentence with the Minnesota

Supreme Court.[2]  Id. at 97.  He argued that:  (1) it is unconstitutional to indict a juvenile to

automatically stand trial for first-degree murder as an adult without any consideration of

individual characteristics and culpability, (App. at 12 (Appellant's Brief) [Doc. No. 10]);

(2) it is unconstitutional to sentence a juvenile to life without parole without any

consideration of the individual's circumstances, (id.); (3) it was prejudicial to Petitioner to

conduct his trial jointly with his co-defendant, (id.); (4) the prosecutor's peremptory

challenge of a prospective juror violated Batson v. Kentucky, (id. at 12–13); (5) the State

did not sufficiently prove that Petitioner committed a crime for the benefit of a gang, (id. at

13); (6) the prosecutor engaged in prosecutorial misconduct that deprived Petitioner of a fair

trial, (id.); (7) the trial court erred in allowing the State to introduce a witness's notes and

related testimony when the notes had not been disclosed during discovery, (id. at 70

(Supplementary Brief)); (8) the trial court erred in allowing a witness to testify after

---

[2]     In Minnesota, appeals of first-degree murder convictions are made directly to the
Minnesota Supreme Court.  Minn. Stat. § 632.14.

violating a sequestration order, (id.); (9) Petitioner was denied effective assistance of counsel during trial because his counsel failed to investigate a key witness and failed to object to errors during trial, (id. at 70–72); and (10) the trial court erred in refusing to allow Petitioner to introduce video evidence of the crime scene, (id. at 70). The Minnesota Supreme Court rejected Petitioner's arguments and affirmed his conviction and sentence. See Martin, 773 N.W.2d at 95.

On November 30, 2010, Petitioner filed his Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to § 2254 ("Habeas Petition") in this Court. The Habeas Petition includes ten claims: (1) the Minnesota Statutes allowing for Petitioner's automatic certification as an adult violated his due process and equal protection rights, (Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to § 2254 ("Pet.") at 5 [Doc. No. 1]); (2) imposing a sentence of life without parole on a juvenile constitutes cruel and unusual punishment in violation of the Eighth Amendment, (id. at 7); (3) the trial court denied Petitioner's due process right to a fair trial by allowing joinder of his trial with a co-defendant, (id. at 8); (4) the State improperly exercised a peremptory challenge to strike a juror based on race in violation of the Fourteenth Amendment and Batson, (id. at 10); (5) Petitioner's due process rights were violated when he was convicted of committing a crime for the benefit of a gang despite insufficient evidence, (id. at 11); (6) Petitioner was denied due process and a fair trial because of prosecutorial misconduct, (id. at 13); (7) Petitioner's due process and Sixth Amendment rights were violated when the trial court allowed a witness to testify regarding statements in her notes, which were not disclosed during discovery, (id. at 15); (8) Petitioner was denied a fair trial when a witness was

allowed to testify after violating a sequestration order, (id. at 17); (9) Petitioner's due

process rights and his right to present a full defense were violated when the trial court

refused to allow Petitioner to introduce video evidence of the crime scene, (id. at 18–19);

and (10) Petitioner received ineffective assistance of counsel during his trial because his

counsel failed to introduce video evidence of the crime scene, (id. at 20).  Petitioner also

filed a supporting memorandum on December 14, 2010 [Doc. No. 6].  Respondent filed an

Answer to Petition for Writ of Habeas Corpus [Doc. No. 8], a memorandum [Doc. No. 9],

and an appendix [Doc. No. 10] on January 28, 2011.  On February 25, 2011, Petitioner filed

a reply brief [Doc. No. 12].

On January 7, 2013, the Magistrate Judge issued his R & R, recommending that

Petitioner's Habeas Petition be denied, the action be dismissed with prejudice, and a

Certificate of Appealability be granted solely as to Petitioner's Eighth Amendment

challenge to his sentence (as stated in Ground 2 of his Petition).  (R & R at 51 [Doc. No.

29].)  Petitioner filed his Written Objections to Report and Recommendation on January 21.

Respondent neither objected to the R & R nor responded to Petitioner's objections.

## III.    DISCUSSION

The district court reviews de novo those portions of the R & R to which a specific

objection is made and "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); accord D.

Minn. LR 72.2(b).  As for Petitioner's underlying claims, the Antiterrorism and Effective

Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), describes the standard for granting

writs of habeas corpus made by persons in state custody:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

In order to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S. Ct. 770, 786–87 (2011) (emphasis added). Under the "contrary to" clause of § 2254(d)(1), a federal court may grant a habeas writ "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant a habeas writ "if the state court identifies the correct governing legal principle from [the U.S. Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." Id. at 411. Rather, the application must also be

"objectively unreasonable." Id. at 409 (emphasis added).

In this case, the Magistrate Judge found that each of Petitioner's claims lacks

merit.[3] (See R & R at 7–49 [Doc. No. 29]). However, he granted a Certificate of

Appealability for Petitioner's Eighth Amendment claim based on the mandatory sentence

of life without parole. (See id. at 50.) Petitioner objects to the Magistrate Judge's

conclusion as to each claim and requests an additional Certificate of Appealability

regarding his Batson claim.

---

[3]     The Magistrate Judge also found that Petitioner procedurally defaulted on his
certification as an adult, joint trial, and ineffective assistance of counsel claims. (See R & R
at 8 n.5, 10, 36 [Doc. No. 29].) Petitioner objected to these findings, arguing that
Respondent waived this defense by not raising it. (See Petitioner's Written Objections to
R & R ("Petr's Objs.") at 1–3, 10 [Doc. No. 30].) "When a state fails to advance a
procedural default argument, such argument is waived.'" Jones v. Norman, 633 F.3d
661, 666 (8th Cir. 2011) (citation omitted) (concluding that the State of Missouri waived
its procedural default defense by not raising it and instead arguing the claim on the
merits). While a federal court has discretion to raise the procedural default issue sua
sponte, the Eighth Circuit has stated that appropriate circumstances for the exercise of
such discretion are instances of "an 'obviously inadvertent' omission . . . or an 'obvious
computation error.'" Id. (citations omitted). In this case, Respondent waived the
procedural default defense by failing to raise it and by proceeding to argue against
Petitioner's certification as an adult, joint trial, and ineffective assistance of counsel claims
on the merits. (See Respt's Mem. at 12–15, 18–21, 34 [Doc. No. 9].) In fact, in response
to the Habeas Petition, Respondent explicitly stated that "Petitioner's claim is not barred
by failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of
limitations." (Respt's Answer to Pet. for Writ of Habeas Corpus at 1 [Doc. No. 8]
(emphasis added).) Therefore, because the omission was express, the Court declines to
exercise its discretion to raise the procedural default issue sua sponte. As discussed
herein, however, the Magistrate Judge correctly concluded that those claims also fail on
the merits.

## A. Automatic Certification as an Adult

Petitioner first objects to the Magistrate Judge's determination that Petitioner's constitutional rights to due process and equal protection were not violated when he was automatically certified to be tried as an adult pursuant to Minnesota law. (Petr's Objs. at 1–2 [Doc. No. 30].) Per statute in Minnesota, juvenile courts have jurisdiction over "delinquent" juveniles. Minn. Stat. § 260B.101, subd. 1. However, "[t]he term delinquent . . . does not include a child alleged to have committed murder in the first degree after becoming 16 years of age." Id. § 260B.007, subd. 6(b). According to the statute, Minnesota district courts have original jurisdiction over these individuals, and they are not entitled to a hearing prior to being tried as an adult. See id. § 260B.101, subd. 2; id. § 260B.125, subd. 10.

Petitioner argues that the U.S. Supreme Court's decision in Kent v. United States, 383 U.S. 541 (1966), renders his automatic certification pursuant to this statutory scheme unconstitutional because the gravity of the potential punishment necessitates that a juvenile be afforded a hearing prior to being tried as an adult.[4] (See Petr's Objs. at 2.) In Kent, the Court analyzed the following statutory language:

---

[4] While Petitioner states generally in his objections that he has established that his equal protection rights were violated by the Minnesota statutes, his only specific objection is in regard to the Magistrate Judge's analysis of Petitioner's due process claim. Because Petitioner has made no specific objections or arguments regarding equal protection, this Court will not review that portion of his claim. See D. Minn. LR 72.2(b) ("(1) A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations . . . . (3) The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. . . .").

"If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult."

Kent, 383 U.S. at 547–48 (quoting D.C. Code § 11-914 (1961)) (emphasis added). The Court determined that the juvenile court had "original and exclusive jurisdiction of the child," and that "the waiver of jurisdiction [was] a critically important action determining vitally important statutory rights of the juvenile." Id. at 556 (emphasis added) (internal quotations omitted). Therefore, according to the Court, a juvenile fitting the criteria of the statute was entitled to a hearing before the juvenile court could waive jurisdiction. See id. at 557.

The Magistrate Judge correctly determined that Kent is inapplicable to Petitioner's situation and does not render his automatic certification as an adult under Minnesota law unconstitutional.[5] (See R & R at 9 [Doc. No. 29].) Contrary to the statutory scheme at issue in Kent, the Minnesota statutes confer upon the district courts, rather than the juvenile courts, original jurisdiction over sixteen-year-olds who are alleged to have committed first-degree murder. No waiver or certification decision is required; rather,

---

[5]     As noted by the Magistrate Judge, the Minnesota Supreme Court declined to address Petitioner's argument that the automatic certification of juveniles to adult court pursuant to Minnesota statute violates equal protection and due process, because Petitioner did not raise these issues in the state district court. (R & R at 8 n.5 [Doc. No. 29] (citing Martin, 773 N.W.2d at 97 n.2).) However, in declining to address the merits of Petitioner's claim, the Minnesota Supreme Court did note that it had rejected those constitutional arguments in State v. Behl, 564 N.W.2d 560 (Minn. 1997). See Martin, 773 N.W.2d at 97 n.2.

individuals fitting those criteria are automatically certified to adult court. Thus, neither the juvenile court nor the district court must engage in a "critically important action" that would render a hearing necessary, and Petitioner was not deprived of due process by virtue of not receiving a hearing. While Petitioner claims that "[a] state legislature should not be able to short circuit a defendant's right to due process by a mere change in the language in a statute when the end result and the enormity of the consequences of the decision remain the same," he cites no authority for the proposition that the legislature has exceeded the scope of its authority in this instance. (See Petr's Objs. at 2 [Doc. No. 30].) For these reasons, Petitioner's automatic certification claim fails.

### B.    Joint Trial

Petitioner next objects to the Magistrate Judge's determination that Petitioner's joint trial claim fails. (Petr's Objs. at 3 [Doc. No. 30].) Specifically, Petitioner claims that "there was significant evidence implicating [his] co-defendant that was presented to the jury and because of the way the two . . . were tried together, it is likely that the evidence against the co-defendant was used against [Petitioner], causing him serious prejudice and due process concerns." (Id.)

Habeas petitioners bear a "'heavy burden'" when challenging a trial court's failure to sever one defendant's trial from that of his co-defendant. Jenner v. Class, 79 F.3d 736, 741 (8th Cir. 1996) (citation omitted). In order to obtain relief, the petitioner must demonstrate "that a joint trial was fundamentally unfair." Hood v. Helling, 141 F.3d 892, 896 (8th Cir. 1998) (citation omitted). While fundamental unfairness is shown where defendants present "mutually antagonistic defenses" to the jury and prevent the jury from

rendering a reliable verdict, "[a]ccusations between codefendants . . . and the admission of evidence by one party that is harmful to the other do not necessarily make a trial fundamentally unfair." Id. at 896–97.

The Magistrate Judge correctly determined that Petitioner has not satisfied his burden of showing that his joint trial with co-defendant Jackson denied him of his constitutional right to a fair trial. (See R & R at 16 [Doc. No. 16].) Petitioner does not contend that his and Jackson's defenses were "mutually antagonistic." Rather, he simply argues that evidence presented against Jackson may have been harmful to Petitioner.[6] However, Petitioner does not identify what specific evidence may have been unfairly prejudicial to him, and he has not provided any reasons why the jury would have been unable to render a verdict as to Petitioner's guilt using only the evidence that pertained to him. Because Petitioner has not demonstrated that the trial court's denial of his motion to sever his trial resulted in a joint trial that was fundamentally unfair, Petitioner's joint trial claim fails.

## C.     Peremptory Challenge

Petitioner objects to the Magistrate Judge's determination that Petitioner's Batson claim is unsustainable. (Petr's Objs. at 3–6 [Doc. No. 30].) As noted in Batson v. Kentucky, "the Equal Protection Clause forbids the prosecutor to challenge potential

---

[6]     Petitioner cites to Zafiro v. United States, 506 U.S. 534, 539 (1993), for the proposition that joinder may cause prejudice that renders a joint trial unfair. (See Petr's Objs. at 3 [Doc. No. 30].) However, the Magistrate Judge correctly pointed out that Zafiro involved the interpretation and application of federal procedural rules, rather than federal constitutional principles. (See R & R at 13 [Doc. No. 29].) Even so, as discussed above, Petitioner has not demonstrated that he was prejudiced by the joint trial.

jurors solely on account of their race." 476 U.S. 79, 89 (1986). The U.S. Supreme Court, therefore, established a process for evaluating a claim that a prosecutor exercised a peremptory challenge in that manner:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. . . . Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. . . . Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Miller-El v. Cockrell, 537 U.S. 322, 328–29 (2003) (internal citations omitted). "The second step of th[e] [Batson] process does not demand an explanation that is persuasive, or even plausible." Purkett v. Elem, 514 U.S. 765, 767–68 (1995). Rather, "'the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" Id. at 768 (quoting Hernandez v. New York, 500 U.S. 352, 360 (1991)). At the third step, "[w]hether a race-neutral explanation is a pretext for discrimination is a question of fact." Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997) (citation omitted). Therefore, "[a] contention that the state courts unreasonably determined that the prosecutor's strikes were not motivated by race is a factual determination subject to the standard set forth in § 2254(d)(2)." Edwards v. Roper, 688 F.3d 449, 454 (8th Cir. 2012) (citation omitted). Under the AEDPA, the state court's factual determinations are "presumed to be correct," and "[t]he [petitioner] has the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Edwards, 688 F.3d at 454.

Petitioner's Batson claim is based on the prosecutor's exercise of a peremptory challenge to exclude Juror 43, an African-American male. See Martin, 773 N.W.2d at 100–01. The prosecutor exercised the challenge after the trial court's initial questioning of Juror 43, claiming that the juror was struck because he thought the criminal justice system treated minorities unfairly, he believed minorities received harsher punishment, his relatives believed a cousin was wrongfully convicted of a crime, and the victim's aunt said Juror 43 "'might not be a good person for the case.'" Id. at 102. The trial court initially denied the challenge for failure to satisfy the second prong of the Batson test. Id. However, after the prosecutor questioned Juror 43, and the juror testified that he thought it was possible that his cousin was wrongfully convicted and that conversations in which people said that minorities are incarcerated longer than non-minorities "stay[ed] in his mind," the district court sustained the prosecutor's renewed peremptory challenge. Id. The court concluded that the prosecutor's reasons were race neutral and that the prosecutor did not demonstrate racial bias. Id. On appeal, the Minnesota Supreme Court found that Juror 43's belief that his family member had been wrongly convicted, and the fact that the juror and the victim's uncle were co-workers, were race-neutral reasons for excluding Juror 43. Id. at 104. The Minnesota Supreme Court concluded that the trial court properly applied Batson and affirmed its decision. Id.

Likewise, the Magistrate Judge found that the trial court applied the correct procedure and, given that federal habeas review of a petitioner's Batson claim must be "extremely deferential," he concluded that he "[could not] find sufficient justification to overturn the Minnesota Supreme Court's adjudication . . . ." (R & R at 21–22 [Doc. No.

13

29].)  Petitioner, however, argues that the reasons given in support of the peremptory strike were not race neutral or were pretext for discrimination.  (Petr's Objs. at 4 [Doc. No. 30].)  First, he asserts that the fact of family involvement in the criminal justice system was not applied equally to jurors of different races.  (Id.)  Second, he claims that a juror's questioning of the fairness of the judicial system is not a race-neutral basis for striking a juror and that he, unlike other jurors, was not believed when he said his out-of-court experiences would not impact his ability to be fair.  (Id. at 4–5.)  Third, he contends that the fact that Juror 43 knew a member of the victim's family should have been favorable to the prosecution.  (Id.)

This Court agrees with the Magistrate Judge.  First, each of the reasons offered by the prosecutor for striking Juror 43 are race neutral.  As discussed above, to survive the second step of the Batson analysis, the reason need not be persuasive or plausible; it simply must not be inherently discriminatory.  Having family involvement in the criminal justice system, questioning the fairness of the judicial system, and knowing a member of the victim's family, are all race-neutral reasons because they are not particular to a member of any one race.  Whether these reasons are persuasive is not considered at the second stage.

Second, Petitioner has not met his burden of rebutting the presumption of correctness accorded to the trial court's factual determination that the prosecutor was not motivated by race.  As for Petitioner's first argument, while several Caucasian individuals who also had personal or family involvement in the criminal justice system were allowed to serve on the jury, Petitioner has not demonstrated that any of those

individuals expressed doubts about how the system had functioned. (See Petitioner's Reply to State's Answer to Writ of Habeas Corpus ("Petr's Reply") at 4–6 (describing the selected jurors who had personal or family involvement in the criminal justice system) [Doc. No. 12].) Therefore, rather than Juror 43 being treated differently than jurors of other races, Juror 43 was readily distinguishable from those individuals.[7]

As for his second argument, regarding questioning the fairness of the justice system, Petitioner states that "[t]he difference in treatment was due to the race of the jurors." (Petr's Objs. at 5 [Doc. No. 30].) However, the trial court found that Juror 43 was not "forthcoming" in his responses about the fairness of the justice system toward minorities and that the prosecutor did not demonstrate racial bias. Martin, 773 N.W.2d at 102– 03. As noted by the Supreme Court:

> Step three of the Batson inquiry involves an evaluation of the prosecutor's credibility, . . . and "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge . . .". In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (e.g., nervousness, inattention), making the trial court's first-hand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie "'peculiarly within a trial judge's province,'" . . . and we have stated that "in the absence of exceptional circumstances, we would defer to [the trial court]." . . .

---

[7]    In addition, an African-American woman who also had a cousin who was convicted of a crime in Minnesota state court was accepted for service on the jury. (Petr's Reply at 4 [Doc. No. 12].) She had indicated, however, that she had a favorable opinion of the criminal justice system. (See id. at 4–5.)

Snyder v. Louisiana, 552 U.S. 472, 477 (2008) (internal citations omitted). Because Petitioner has not presented clear and convincing evidence that the trial court erred in its determinations of credibility and demeanor, this Court will not second-guess the trial court's determinations. Likewise, Petitioner's third argument fails because his bare assertion that knowing the victim's family member should have been favorable to the prosecution does not constitute clear and convincing evidence of discriminatory intent sufficient to overcome the trial court's factual determinations.[8]

Based on the foregoing, this Court concludes that Petitioner has not demonstrated that the state court's decision regarding his Batson claim was contrary to, or involved an unreasonable application of, a U.S. Supreme Court decision, or that it was based on an unreasonable determination of the facts. However, the Court will grant Petitioner a Certificate of Appealability on this issue. As Petitioner noted, two Justices of the Minnesota Supreme Court dissented from that court's opinion on the grounds that the State did not meet its burden of showing a race-neutral basis for excluding Juror 43. See Martin, 773 N.W.2d at 111 (Page, J., dissenting). This is evidence that the issue could be "debatable among reasonable jurists" and warrants appellate review. Flieger v. Delo, 16 F.3d 878, 883 (8th Cir. 1994).

---

[8]      In addition, Petitioner argued to the Magistrate Judge that Juror 43 was treated differently than a non-minority juror who was allowed to serve on the jury even though that juror, in the past, "work[ed] in the same location as the victim's aunt." (See Petr's Reply at 7 [Doc. No. 12].) However, the state district court's concern relating to Juror 43 was that Juror 43 was working, albeit indirectly, with an uncle of the victim at the time of the trial and that they "had a past occasion to spend eight to ten hours in an automobile traveling to and from Bemidji for work." (Respt's Mem. at 11 [Doc. No. 9] (quoting Jury Selection Tr. at 840–42).) Therefore, Juror 43 and the selected juror are distinguishable.

### D. Admission of Undisclosed Evidence

Petitioner next objects to the Magistrate Judge's determination that Petitioner has not presented a valid <u>Brady</u> claim based on the State's failure to timely disclose evidence. (Petr's Objs. at 6–7 [Doc. No. 30].)  The evidence at issue consists of notes taken by prosecution witness Sergeant Dunlop when she interviewed another witness, Paris Patton, and Sergeant Dunlop's related testimony.  (<u>See</u> Pet. at 15–16 [Doc. No. 1].)  Petitioner specifically argues that, although he was able to cross-examine both Sergeant Dunlop and Patton, he "did not get the necessary and required opportunity to prepare to do so." (Petr's Objs. at 7.)  Therefore, he claims, his Sixth Amendment rights were violated. (<u>Id.</u>)

In <u>Brady v. Maryland</u>, the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 87 (1963). "Material" means "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).  Therefore, "[t]here are three components of a true <u>Brady</u> violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  <u>Strickler v. Greene</u>, 527 U.S. 263, 281–82 (1999).  In addition, the Sixth Amendment provides a defendant with the right to confront adverse witnesses.

Although the Minnesota Supreme Court did not specifically refer to these standards in denying Petitioner's claims, its analysis addresses all three Brady elements and demonstrates that the first and third elements are not satisfied. The court's finding that the notes merely corrected an error in a witness's formal report relates to the first element. See Martin, 773 N.W.2d at 109. And, the court's conclusion that any discovery violation that may have occurred was "harmless" relates to the third element. Id. In addition, the court's finding that Petitioner ultimately received the notes, and was able to investigate and cross-examine both witnesses, addresses Petitioner's Sixth Amendment argument and demonstrates that Petitioner was not denied his right to confront adverse witnesses. See id.

As correctly determined by the Magistrate Judge, Petitioner has failed to show that the Minnesota Supreme Court committed any error that is cognizable under 28 U.S.C. § 2254(d). (See R & R at 23–24 [Doc. No. 29].) Petitioner has not established that the evidence was exculpatory or impeaching or that he was prejudiced by the State's failure to disclose the evidence earlier. He has also failed to demonstrate how his ability to confront the adverse witnesses was impaired. Accordingly, Petitioner's Brady and Sixth Amendment claims fail.

### E.    Breach of Sequestration Order

Petitioner also objects to the Magistrate Judge's denial of a writ of habeas corpus based on the trial court's allowance of testimony from a witness, Charles Pettis, who violated a sequestration order. (Petr's Objs. at 7–8 [Doc. No. 30].) Specifically, Petitioner argues that Pettis's testimony was "incredibly important" at Petitioner's trial

and that the Minnesota Supreme Court and the Magistrate Judge "failed to take into account how [the] trial would have been different had Pettis not been able to tailor his testimony to so closely match that of [the witness he overheard]." (Id. at 8.)

As noted by the Magistrate Judge, "[a] state court's evidentiary ruling is a matter of state law, and [federal courts] may examine the ruling in a habeas proceeding only to determine whether the asserted error denied due process." Bailey v. Lockhart, 46 F.3d 49, 50 (8th Cir. 1995) (citation omitted). The petitioner must demonstrate that "'the alleged error was so conspicuously bad that it fatally infected the trial and rendered it fundamentally unfair.'" Gee v. Groose, 110 F.3d 1346, 1350 (8th Cir. 1997) (citation omitted). In other words, "'the petitioner must show . . . that absent the alleged impropriety the verdict probably would have been different.'" Id. (citation omitted). This is a heavy burden because "[r]ulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000).

In this case, the Minnesota Supreme Court found that Petitioner failed to demonstrate any prejudice resulting from the trial court's evidentiary ruling. See Martin, 773 N.W.2d at 110. Petitioner asserts that the prejudice is evident because Pettis, who identified Petitioner as being at the scene of the crime, overheard the only other witness who identified Petitioner as being at the scene of the crime, testify about the location of the shooters at the time of the incident. (Petr's Objs. at 7 [Doc. No. 30].) While Petitioner claims that the Minnesota Supreme Court failed to consider how the trial would have been different had Pettis not overheard the other witness's testimony, Petitioner does not demonstrate that the outcome

"probably" would have been different. For example, assuming that Pettis would have testified differently, Petitioner does not demonstrate that the weight of the other evidence and eyewitness testimony does not support the verdict. Thus, Petitioner has not met his burden. See Gee, 110 F.3d at 1350 (holding that admission of one statement connecting the defendant to the crime did not rise to the level of a constitutional violation where other evidence linked the defendant to the crime and supported a finding of his guilt). Because Petitioner has not demonstrated that the state court's decision was contrary to, or involved an unreasonable application of, a U.S. Supreme Court decision, or that it was based on an unreasonable determination of the facts, Petitioner's breach of sequestration order claim fails.

### F.    Exclusion of Evidence

Petitioner next objects to the Magistrate Judge's determination that Petitioner was not denied the right to present a full defense when the trial court refused to allow Petitioner to introduce video evidence of the crime scene. (Petr's Objs. at 8 [Doc. No. 30].) Specifically, Petitioner claims that the video would have demonstrated that the testimony of the witnesses who placed him at the scene of the crime was inaccurate by showing the jury what those witnesses would have been able to see from their alleged location at the time of the incident. (Id.)

As discussed above, federal habeas courts may examine state court evidentiary rulings only to determine whether the asserted error denied due process. Bailey, 46 F.3d at 50. The petitioner must demonstrate that "'the alleged error was so conspicuously bad that it fatally infected the trial and rendered it fundamentally unfair.'" Gee, 110 F.3d at

1350 (citation omitted).  In other words, "'the petitioner must show . . . that absent the alleged impropriety the verdict probably would have been different.'"  Id. (citation omitted).  This is a heavy burden because "'[o]nly the exclusion of critical, reliable and highly probative evidence will violate due process.'"  Nebinger, 208 F.3d at 697 (citation and emphasis omitted).

Here, the Minnesota Supreme Court found that the district court's failure to admit the video evidence was harmless error.  See Martin, 773 N.W.2d at 109.  It determined that the video evidence was "largely redundant because photographs already admitted showed the same scenes the video would have shown," and that Petitioner was able to use the photographs to make the argument that the eyewitnesses would have been unable to see what they claimed to have seen.  Id.  Therefore, the video evidence does not appear to have been critical, and Petitioner's vague argument to the contrary does not demonstrate that the outcome of the trial "probably" would have been different had the video evidence been admitted.  Thus, Petitioner has not met his burden.  Because Petitioner has not demonstrated that the state court's decision was contrary to, or involved an unreasonable application of, a U.S. Supreme Court decision, or that it was based on an unreasonable determination of the facts, Petitioner's exclusion of evidence claim fails.

### G.    Prosecutorial Misconduct

Petitioner also objects to the Magistrate Judge's determination that the alleged prosecutorial misconduct did not rise to a level warranting relief.  (Petr's Objs. at 8–10 [Doc. No. 30].)  Specifically, Petitioner argues that, "[t]he misconduct during trial and closing arguments was all directed at Petitioner's most fundamental trial rights and when

viewed together unfairly prejudiced Petitioner." (Id. at 9.) He claims that the overall effect of the conduct was prejudicial and implicated his right to remain silent, the presumption of innocence, and the standard of guilt beyond a reasonable doubt. (See id. at 9–10.)

Federal habeas relief generally is not warranted on the grounds of prosecutorial misconduct unless the misconduct injected enough unfairness into the trial to render the conviction a denial of due process. Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 2002) (citations omitted). To qualify, "improper remarks by a prosecutor must be 'so egregious that they fatally infect [] the proceedings and render[ ] [a defendant's] entire trial fundamentally unfair.'" Id. (citation omitted). The petitioner must demonstrate "'that absent the alleged impropriety the verdict probably would have been different.'" Id. (citation omitted).

Petitioner alleged several instances of prosecutorial misconduct in his arguments to the Minnesota Supreme Court, including improper questioning of witnesses, misstating the burden of proof, implying that Petitioner had a duty to testify before the grand jury, impermissibly vouching for witnesses' credibility, inflaming the jurors' prejudices, commenting on Petitioner's decision not to testify, and disparaging Petitioner's defense. See Martin, 773 N.W.2d at 104–08. The Minnesota Supreme Court thoroughly analyzed these allegations and found that most of the occurrences did not constitute prosecutorial misconduct. See id. In fact, the Minnesota Supreme Court found that the prosecutor's conduct may have been improper in only three instances and that, even if it was improper in those instances, it was harmless in light of the subsequent curative instructions and the

amount of evidence in support of Petitioner's guilt.  See id. at 105–07.  On review, the

Magistrate Judge similarly enumerated Petitioner's multiple allegations of prosecutorial

misconduct and determined that the Minnesota Supreme Court's conclusions were not

objectively unreasonable.  (See R & R at 28–32 [Doc. No. 29].)  Petitioner does not object

to the Minnesota Supreme Court's ruling on any specific act of alleged prosecutorial

misconduct.[9]  (See Petr's Objs. at 8–10 [Doc. No. 30].)  Thus, the Court adopts the

Magistrate Judge's determination that the Minnesota Supreme Court's conclusions as to

the specific instances of alleged misconduct were not objectively unreasonable.

Petitioner instead takes issue with the Minnesota Supreme Court's and the

Magistrate Judge's "attempt[] to part and parcel out each piece of misconduct and review

it separately" rather than looking at it "together and in context."  (Id. at 10.)  As noted

above, the Minnesota Supreme Court found that only three of the alleged instances of

prosecutorial misconduct could possibly be considered improper.  Those instances were:

(1) asking a witness if testifying would put him in danger and using the term "gangster";

(2) arguing during closing argument that Petitioner's co-defendant could have chosen to

testify before the grand jury; and (3) impermissibly vouching for witnesses during closing

argument.  See Martin, 773 N.W.2d at 104–08.  Even assuming that the prosecutor's

conduct in each of those instances was improper, the cumulative effect of the improprieties

---

[9]      Even if Petitioner's general comments were meant to refer to the specific
instances, Petitioner has failed to demonstrate that the state court's decision regarding any
one of the specific instances was contrary to, or involved an unreasonable application of, a
U.S. Supreme Court decision, or that it was based on an unreasonable determination of the
facts.  Therefore, habeas relief is not warranted based on any alleged specific act of
prosecutorial misconduct.

did not inject enough unfairness into the trial to render Petitioner's conviction a denial of due process. First, there are only three instances of alleged misconduct potentially at issue in the context of a seven-day trial. See id. at 105 (noting that Petitioner's trial lasted seven days). Second, curative measures were taken in response to each alleged instance of misconduct. In the first and third instances, the court instructed the jury to disregard the prosecutor's statements. See id. at 105, 107. Because jurors are presumed to follow instructions from the court, it is assumed that they disregarded the prosecutor's allegedly improper questioning of the witness and statements about the witnesses' credibility. See Richardson v. Marsh, 481 U.S. 200, 206 (1987) (citation omitted) (stating that there is an "almost invariable assumption of the law that jurors follow their instructions"). As for the second alleged impropriety, which was actually directed at Petitioner's co-defendant, the prosecutor corrected his statement. See Martin, 773 N.W.2d at 106. Third, there was strong evidence of Petitioner's guilt, including the testimony of two eyewitnesses, the testimony of a ten-year-old boy who corroborated the eyewitness testimony, and testimony from a witness who stated that Petitioner admitted to his involvement in the murder. See id. at 96–97.

In light of the curative measures and the strong evidence of Petitioner's guilt, it is likely that the verdict would have been the same even in the absence of all of the alleged misconduct. Petitioner has not met his burden of establishing that the contrary is true. Therefore, habeas relief is not warranted in this case on the grounds of prosecutorial misconduct.

## H.     Insufficient Evidence

Petitioner objects to the Magistrate Judge's determination that whether there was sufficient evidence to convict Petitioner of committing a crime for the benefit of a gang is moot.  (Petr's Objs. at 10 [Doc. No. 30].)  In support of his argument, Petitioner quotes the following statement by the U.S. Supreme Court:  "'[N]o person shall be made to suffer the onus of a <u>criminal conviction</u> exception [sic] upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.'"  (Petr's Objs. at 10 [Doc. No. 30] (emphasis added) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 315 (1979)).)  However, as the Minnesota Supreme Court noted in finding Petitioner's claim to be moot, Petitioner was neither sentenced <u>nor</u> convicted for the offense of crime committed for the benefit of a gang.  <u>See</u> <u>Martin</u>, 773 N.W.2d at 108.  Thus, Petitioner has not demonstrated how the Minnesota Supreme Court's decision is contrary to, or involved an unreasonable application of, any U.S. Supreme Court decision.[10]  Accordingly, Petitioner's insufficiency of the evidence claim fails.

---

[10]     The Magistrate Judge noted that Petitioner's "insufficiency of the evidence claim" included an assertion that the amount of evidence presented that was related to gangs had a prejudicial effect on Petitioner's right to a fair trial.  (<u>See</u> R & R at 33 [Doc. No. 29] (citing Pet. at 12 [Doc. No. 1]).)  The Magistrate Judge determined that it was unclear whether Petitioner intended for that assertion to constitute a separate claim for relief, but that the claim would fail anyway because it was not tied to the federal Constitution and was not raised in front of the Minnesota Supreme Court on direct appeal.  (<u>See</u> <u>id.</u> at 33–35.)  In his objections, Petitioner does not argue that this assertion was meant to be a separate claim or that, if it was, the Magistrate Judge's conclusions were erroneous.  Therefore, because the alleged prejudicial effect of the evidence is not relevant to Petitioner's insufficiency of the evidence claim, this Court declines to address the issue.

# I. Ineffective Assistance of Counsel

Petitioner next objects to the Magistrate Judge's determination that Petitioner's ineffective assistance of counsel claim lacks merit. (Petr's Objs. at 10–11 [Doc. No. 30].) Petitioner makes no specific objections to the Magistrate Judge's R & R, but instead relies on his previous argument. (See id. at 11.) Petitioner's previous argument was, essentially, that his trial counsel was ineffective because she failed to introduce the above-referenced video evidence while the person who made the video was testifying, thus precluding its later admission for lack of foundation. (See Petr's Habeas Mem. at 24–25 [Doc. No. 6].)

In order to succeed on an ineffective assistance of counsel claim, "a defendant has the burden of showing (1) trial counsel was deficient and (2) the defense was prejudiced as a result." Cochran v. Dormire, 701 F.3d 865, 869 (8th Cir. 2012) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To satisfy the first element, "a defendant must show 'counsel's representation fell below an objective standard of reasonableness.'" Id. (quoting Strickland, 466 U.S. at 687–88). To satisfy the second element, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694).

The Magistrate Judge correctly determined that Petitioner is unable to prevail on his ineffective assistance of counsel claim because he cannot establish the requisite prejudice. (See R & R at 38 [Doc. No. 29].) As the Court already determined above, Petitioner has failed to demonstrate that the result of the trial probably would have been different had the

video evidence been admitted.  Likewise, Petitioner has not demonstrated that, but for

counsel's failure to introduce the video during the author's testimony, the result of the trial

would have been different.  Therefore, Petitioner's ineffective assistance of counsel claim

fails.

### J.    Unconstitutional Sentence

Finally, Petitioner objects to the Magistrate Judge's interpretation and application

of precedent in denying Petitioner's claim that his mandatory sentence to prison for life

without the possibility of parole[11] violates the Eighth Amendment.  (Petr's Objs. at 11–12

[Doc. No. 30].)  When Petitioner challenged his sentence on direct appeal, the Minnesota

Supreme Court analyzed whether the U.S. Supreme Court's decision in Roper v.

Simmons, 543 U.S. 551 (2005), mandated a finding that a sentence of life without the

possibility of release is cruel and unusual punishment.  See Martin, 773 N.W.2d at 97–98.

In Roper, the Court held that the Eighth Amendment prohibits the death penalty for

juvenile offenders.  543 U.S. at 574.  The Minnesota Supreme Court found that Roper did

not render Petitioner's sentence unconstitutional and affirmed Petitioner's conviction and

sentence on October 8, 2009.  See id. at 98, 110.

Petitioner did not seek certiorari review in the U.S. Supreme Court, so his

conviction and sentence became final upon expiration of the 90-day deadline for seeking

certiorari review, which was approximately January 6, 2010.  See Greene v. Fisher, 132

---

[11]    In Minnesota, life without the possibility of release is the mandatory minimum
sentence for an individual convicted of first-degree premeditated murder.  See Minn. Stat.
§ 609.185(a)(1); id. § 609.106, subd. 2(1).

S. Ct. 38, 44 (2011) ("Finality occurs when direct state appeals have been exhausted and a petition for writ of certiorari from [the U.S. Supreme] Court has become time barred or has been disposed of.").  On June 25, 2012—almost two and a half years after Petitioner's conviction and sentence became final, and one and a half years after Petitioner filed his Habeas Petition in this Court—the U.S. Supreme Court issued its decision in <u>Miller v. Alabama</u>, in which it held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."  132 S. Ct. 2455, 2469 (2012).  The Magistrate Judge ordered both parties to submit briefing on the relevance of <u>Miller</u> to Petitioner's claim.  (Order dated Oct. 4, 2012 [Doc. No. 25].)  The Magistrate Judge ultimately determined that Petitioner was unable to satisfy the AEDPA standard by showing that the Minnesota Supreme Court's resolution of his Eighth Amendment claim was objectively unreasonable under the U.S. Supreme Court precedent in existence at the time of its decision, which included <u>Roper</u> but not <u>Miller</u>.  (<u>See</u> R & R at 46, 48–49 [Doc. No. 29].)

As correctly noted by the Magistrate Judge, the U.S. Supreme Court, in <u>Teague v. Lane</u>, 489 U.S. 288 (1989), "'laid out the framework to be used in determining whether a rule announced in one of [its] opinions should be applied retroactively to judgments in criminal cases that are already final on direct review.'"  (R & R at 41 [Doc. No. 29] (quoting <u>Whorton v. Bockting</u>, 549 U.S. 406, 416 (2007)).  Under this framework, a "new" rule is not applicable to a case that became final before the rule was announced, unless is falls under one of two exceptions.  <u>Teague</u>, 489 U.S. at 310.  According to the Court, this <u>Teague</u> inquiry is distinct from the AEDPA inquiry.  <u>Greene</u>, 132 S. Ct. at 44

(citing <u>Horn v. Banks</u>, 536 U.S. 266, 272 (2002)). "Thus, in addition to performing any analysis required by AEDPA, a federal court considering a habeas petition must conduct a threshold <u>Teague</u> analysis when the issue is properly raised by the state."[12] <u>Horn</u>, 536 U.S. at 272. Here, the issue was properly raised by Respondent in the supplemental

---

[12] While the Supreme Court has clearly stated that the AEDPA and <u>Teague</u> inquiries are distinct, it has not clearly stated how the two standards interrelate in a § 2254(d)(1) case. As discussed above, a writ may be issued pursuant to § 2254(d)(1) <u>only</u> if the state court's decision "was contrary to, or involved an unreasonable application of, <u>clearly established</u> Federal law, as determined by the Supreme Court of the United States." (Emphasis added.) Thus, if the § 2254(d)(1) and <u>Teague</u> standards are distinct inquiries, it is not clear whether a § 2254 petitioner can rely on a rule that is considered "new" under <u>Teague</u> (even if it falls within a <u>Teague</u> exception) because the rule will not also be "clearly established" for purposes of § 2254(d)(1). The Supreme Court expressly left this question open in <u>Greene v. Fisher</u>: "Whether § 2254(d)(1) would bar a federal habeas petitioner from relying on a decision that came after the last state-court adjudication on the merits, but fell within one of the exceptions recognized in <u>Teague</u> . . . is a question we need not address to resolve this case." 132 S. Ct. at 44 n.*. In the absence of specific guidance, some courts have determined that § 2254(d)(1) forecloses consideration of the <u>Teague</u> exceptions once a rule is determined to be "new," while other courts analyze the <u>Teague</u> exceptions even if the rule at issue is found to be "new." <u>Compare</u> <u>Ramdass v. Angelone</u>, 187 F.3d 396, 406 & n.4 (4th Cir. 1999) (stating that § 2254(d)(1) is "stricter" than <u>Teague</u> because it does not recognize the two <u>Teague</u> exceptions that permit retroactive application of new rules), <u>and</u> <u>Himes v. Thompson</u>, 336 F.3d 848, 855 n.4 (9th Cir. 2003) ("Because [the petitioner's] case was adjudicated prior to the decision in <u>Garner</u>, the requirements of 28 U.S.C. § 2254(d)(1) would bar the application of <u>Garner</u> if <u>Garner</u> established a 'new rule' of constitutional law according to the principles of <u>Teague</u> . . . ."), <u>with</u> <u>Bintz v. Bertrand</u>, 403 F.3d 859, 865–67 (7th Cir. 2005) (considering a § 2254(d)(1) petition and stating that, even though a rule was "new" under <u>Teague</u>, the court must also determine whether the rule might apply retroactively based on the <u>Teague</u> exceptions). The Eighth Circuit appears to follow the latter approach. <u>See</u> <u>Danforth v. Crist</u>, 624 F.3d 915, 918–21 (8th Cir. 2010) (finding that a "new" rule could not be applied retroactively because it did not satisfy the <u>Teague</u> exceptions, and then determining whether the state court's adjudication unreasonably applied clearly established federal law in existence at the time the state court rendered its decision). This Court will, therefore, apply both the <u>Teague</u> and § 2254(d)(1) standards to Petitioner's claim. Because the Court concludes that <u>Miller</u> is a "new" rule under <u>Teague</u>, but that it does not satisfy either <u>Teague</u> exception, this Court will not reach the issue left open in <u>Greene</u>.

briefing ordered by the Magistrate Judge.  Therefore, both a <u>Teague</u> and an AEDPA

analysis are appropriate in this case.[13]

### 1.  Retroactivity of <u>Miller</u> Under <u>Teague</u>

The U.S. Supreme Court has set out a three-step process for conducting a <u>Teague</u>

analysis:

> First, the court must ascertain the date on which the defendant's conviction
> and sentence became final for <u>Teague</u> purposes.  Second, the court must
> '[s]urve[y] the legal landscape as it then existed,' . . . and 'determine
> whether a state court considering [the defendant's] claim at the time his
> conviction became final would have felt compelled by existing precedent to
> conclude that the rule [he] seeks was required by the Constitution . . . .
> Finally, even if the court determines that the defendant seeks the benefit of
> a new rule, the court must decide whether that rule falls within one of the
> two narrow exceptions to the nonretroactivity principle.

<u>Caspari v. Bohlen</u>, 510 U.S. 383, 390 (1994).  Several federal and state courts[14] have

already used this analysis to determine whether <u>Miller</u> should be applied retroactively on

collateral review.  Many of those courts, including the Minnesota Supreme Court, have

concluded that it cannot be applied in that manner.  <u>See</u> <u>Craig v. Cain</u>, No. 12-30035,

2013 WL 69128, at *1–2 (5th Cir. Jan. 4, 2013) (finding that <u>Miller</u> is a "new rule" under

<u>Teague</u> and that it does not satisfy either exception necessary for retroactive application);

<u>Chambers v. Minnesota</u>, 831 N.W.2d 311, 331 (Minn. 2013) (same); <u>People v. Carp</u>, 828

---

[13]    The Court notes that, after the Magistrate Judge in this case determined that <u>Miller</u>
was a "new" rule for <u>Teague</u> purposes, he bypassed consideration of the <u>Teague</u>
exceptions and applied the § 2254(d)(1) standard.  (<u>See</u> R & R at 44 [Doc. No. 29].)
Because neither the Supreme Court nor the Eighth Circuit has clearly stated how the two
standards relate, and because Petitioner's claim fails under both standards, the Court finds
no error in this analysis.

N.W.2d 685, 723 (Mich. Ct. App. 2012) (same); Louisiana v. Huntley, 118 So.3d 95, 103 (La. Ct. App. 2013) (same); see also In re Morgan, 713 F.3d 1365, 1368 (11th Cir. 2013) (applying an analysis similar to the Teague analysis and determining that Miller announced a "new rule" that is not retroactive because it did not categorically ban a sentence of life without parole for minors). But see Alejandro v. United States, Nos. 13 Civ. 4364(CM), S4 98 Cr. 290-06 (CM), 2013 WL 4574066, at *1 (S.D.N.Y. Aug. 22, 2013) (concluding, without analysis, that Miller announced a new, substantive rule that "must be applied retroactively on collateral review"); Hill v. Snyder, No. 10-14568, 2013 WL 364198, at *2 n.2 (E.D. Mich. Jan. 30, 2013) (noting, in a case not before the court on collateral review, that the court "would find Miller retroactive on collateral review, because it is a new substantive rule" and because the Supreme Court applied Miller to the companion case before it on collateral review); Iowa v. Ragland, ___ N.W.2d ___, No. 12-1758, 2013 WL 4309970, at *6–8 (Iowa 2013) (holding that Miller announced a substantive rule that should be applied retroactively); Jones v. Mississippi, ___ So.3d ___, 2013 WL 3756564, at *5 (Miss. 2013) (holding that Miller should be applied retroactively to cases on collateral review because it announced a new, substantive rule); Illinois v. Morfin, 981 N.E.2d 1010, 1022 (Ill. App. Ct. 2012) (same); Illinois v. Williams, 982 N.E.2d 181, 197 (Ill. App. Ct. 2012) (holding that Miller should be applied retroactively because it announced a watershed rule of criminal procedure).

---

[14]     "Constitutional law is not the exclusive province of the federal courts, and in the Teague analysis the reasonable views of state courts are entitled to consideration along with those of federal courts." Caspari, 510 U.S. at 395.

The Eighth Circuit has not yet ruled on the retroactivity of <u>Miller</u>, but it did recently grant a petitioner authorization to file a successive § 2255 motion based on <u>Miller</u> because he "ha[d] made a <u>prima facie</u> showing . . . that his motion contains 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court.'" <u>Johnson v. United States</u>, 720 F.3d 720, 720 (8th Cir. 2013) (quoting 28 U.S.C. § 2255(h)(2)). However, the court emphasized "that a <u>prima facie</u> showing . . . is 'simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.'" <u>Id.</u> (citation omitted). Moreover, the government had conceded that <u>Miller</u> is retroactive. <u>Id.</u> In response to the per curiam opinion, the dissenting judge argued that "[a] new rule is not 'made retroactive' unless the Supreme Court <u>holds</u> it to be retroactive" and that "[t]o rule that <u>Miller</u> announced a 'substantive' rule would require an extension of the Supreme Court's holdings." <u>Id.</u> (citation omitted). Therefore, it is not clear whether the Eighth Circuit would consider <u>Miller</u> to be retroactive on collateral review under <u>Teague</u>.

This Court will follow the decisions of the courts, including the Minnesota Supreme Court, that have determined <u>Miller</u> is not retroactive on collateral review.[15] As discussed above, Petitioner's conviction and sentence became final on or about January 6, 2010. Because the rule announced in <u>Miller</u> was not compelled by existing precedent,

---

[15] However, the Court acknowledges that this is an issue that is "debatable among reasonable jurists" and that different courts have resolved the issues differently. <u>Flieger</u>, 16 F.3d at 883 (citing <u>Lozada v. Deeds</u>, 498 U.S. 430, 432 (1991)). Therefore, the Court agrees with the Magistrate Judge that this is an appropriate issue on which to grant a Certificate of Appealability.

and because neither of the <u>Teague</u> exceptions applies, <u>Miller</u> should not be applied retroactively to Petitioner's case.[16]

### a. <u>Miller</u> announced a "new" rule

Petitioner argues that the holding in <u>Miller</u> was not a "new" rule because <u>Miller</u> did not overrule precedent; it is consistent with the holdings in <u>Graham v. Florida</u>, 130 S. Ct. 2011 (2010), and <u>Roper v. Simmons</u>, 543 U.S. 551 (2005); and it merely explains the scope of the Eighth Amendment as it relates to the sentencing of juvenile offenders. (<u>See</u> Petr's Objs. at 11–12 [Doc. No. 30].) Under <u>Teague</u>, however, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government[,] . . . [or] if the result was not dictated by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301 (citations and emphasis omitted).

---

[16] Several of the courts that determined <u>Miller</u> is retroactive on collateral review were persuaded by the U.S. Supreme Court's remand of <u>Miller</u>'s companion case, <u>Jackson v. Hobbs</u>. <u>See</u> <u>Hill</u>, 2013 WL 364198, at *2 n.2; <u>Ragland</u>, ___ N.W.2d ___, 2013 WL 4309970, at *7; <u>Morfin</u>, 981 N.E.2d at 1022–23; <u>Williams</u>, 982 N.E.2d at 197. Petitioner also made this argument in his supplemental briefing in front of the Magistrate Judge. (<u>See</u> Petitioner's Submissions on <u>Miller v. Alabama</u> Issue at 4–6 [Doc. No. 28].) However, the Supreme Court did not specifically hold that the rule it announced is retroactive; rather, it merely "remand[ed] the cases for further proceedings not inconsistent with [its] opinion." <u>Miller</u>, 132 S. Ct. at 2475. As noted by the Michigan Court of Appeals:

> [T]he mere fact that the Court remanded <u>Jackson</u> for sentencing does not constitute a ruling or determination on retroactivity. Specifically: "The only way the Supreme Court can, by itself, 'lay out and construct' a rule's retroactive effect, or 'cause' that effect 'to exist, occur, or appear,' is through a holding. . . . . [A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."

<u>Carp</u>, 828 N.W.2d at 712–13 (quoting <u>Tyler v. Cain</u>, 533 U.S. 656, 663 (2001)). The Court did not specifically hold that <u>Miller</u> is retroactive on collateral review. Thus, the fact that the Court remanded <u>Jackson</u> is not dispositive of the issue.

While the Court's opinions in <u>Graham</u> (holding that the Eighth Amendment prohibits a sentence of life without the possibility of parole for a juvenile who committed a non-homicide offense), <u>see</u> 130 S. Ct. at 2034, and <u>Roper</u> (holding that the Eighth Amendment prohibits the death penalty for a juvenile), <u>see</u> 543 U.S. at 578, are consistent with and led to the Court's decision in <u>Miller</u>, <u>see</u> <u>Miller</u>, 132 S. Ct. at 2464, <u>Miller</u> was not dictated by those precedents.  <u>In re Morgan</u>, 713 F.3d at 1367.  Rather, "<u>Miller</u> established for the first time a requirement of individualized sentencing outside the death penalty context."  <u>Craig</u>, 2013 WL 69128, at *1; <u>see</u> <u>In re Morgan</u>, 713 F.3d at 1367; <u>Morfin</u>, 981 N.E.2d at 1022.  Thus, the Magistrate Judge correctly determined that the rule announced in <u>Miller</u> is "new" for purposes of conducting a <u>Teague</u> analysis.

### b.     Neither <u>Teague</u> exception applies

Petitioner argues that, even if <u>Miller</u> is a new rule, it should be treated as being in effect at the time of Petitioner's sentencing because it satisfies the <u>Teague</u> exceptions for retroactivity.  (Petr's Objs. at 12 [Doc. No. 30].)  There are two exceptions to the general principle that new rules are not applied retroactively on collateral review:

> The first exception permits the retroactive application of a new rule if the rule places a class of private conduct beyond the power of the State to proscribe, . . . or addresses a "substantive categorical guarante[e] accorded by the Constitution," such as a rule "prohibiting a certain category of punishment for a class of defendants because of their status or offense." . . .

> The second exception is for "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding. . . .

<u>Saffle v. Parks</u>, 494 U.S. 484, 487–88 (1990) (internal citations omitted); <u>see</u> <u>Teague</u>, 489 U.S. at 1075–76.  Because neither exception applies to the rule announced in <u>Miller</u>, it cannot be applied retroactively to Petitioner's case.

As noted above, the Court in <u>Miller</u> held that "the Eighth Amendment forbids a <u>sentencing scheme</u> that mandates life in prison without possibility of parole for juvenile offenders."  132 S. Ct. at 2469 (emphasis added).  Thus, <u>Miller</u> does not satisfy the first <u>Teague</u> exception because it does not place a class of conduct (homicide by a juvenile) beyond the power of the state to proscribe, nor does it prohibit a category of punishment (life in prison without parole) for a class of defendants (juveniles) based on their offense (homicide).  Rather, <u>Miller</u> prohibits a sentencing <u>scheme</u> in which a particular sentence is mandatory rather than the result of a process in which the offender's youth and attendant circumstances are considered.  <u>See</u> <u>id.</u> at 2471 ("Our decision does not categorically bar a penalty for a class of offenders or type of crime . . . . Instead, it mandates only that a sentence follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty.").  Indeed, post-<u>Miller</u>, juveniles convicted of homicide may still receive a sentence of life in prison without the possibility of parole.  <u>See</u> <u>id.</u> at 2469 ("Although we do not foreclose a sentencer's ability to [sentence a juvenile to life without parole] in homicide cases, we require it to take into account how children are different . . . .").

Neither does <u>Miller</u> satisfy the second <u>Teague</u> exception because it is not a watershed rule of criminal procedure.  The Supreme Court has articulated two requirements for satisfying this exception:  "First, the rule must be necessary to prevent

an impermissibly large risk of an inaccurate conviction. . . . Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Whorton, 549 U.S. at 418 (internal citations and quotation marks omitted). The rule announced in Miller, however, pertains exclusively to sentencing and does not affect the accuracy or fairness of the underlying conviction.

In summary, because the Court in Miller announced a "new" rule that is neither substantive nor a watershed rule of criminal procedure, it is not retroactive on collateral review.

### 2.      Section 2254(d)(1) Review of State Court Decision

After determining that Miller announced a "new" rule, the Magistrate Judge proceeded to analyze whether Petitioner could satisfy the § 2254(d)(1) standard.  (See R & R at 44 [Doc. No. 29].)  The Magistrate Judge determined that "[b]efore Miller, the decisions of the United States Supreme Court, including Roper, did not compel reasonable jurists to conclude that mandatory life without parole must be unconstitutional."  (Id. at 48.)  Therefore, the Magistrate Judge concluded that the Minnesota Supreme Court's ruling was not objectively unreasonable in light of U.S. Supreme Court precedent that was clearly established at the time the Minnesota Supreme Court rendered its decision.  (Id. at 48–49.)

Petitioner does not object to the Magistrate Judge's determination regarding the Minnesota Supreme Court's analysis of pre-Miller precedent; rather, his objection is that Miller is retroactive and did apply at the time of his sentencing and, therefore, that the Minnesota Supreme Court's decision was an unreasonable application of, and contrary to,

36

federal law. As discussed above, Petitioner's retroactivity argument fails. Accordingly, because there is no objection to the Magistrate Judge's review of the state court's application of pre-<u>Miller</u> precedent, the Court adopts the Magistrate Judge's determination that Petitioner failed to satisfy the § 2254(d)(1) standard. (<u>See</u> <u>id.</u> at 46–47.)

Based on the foregoing determinations that <u>Miller</u> is not retroactive on collateral review under <u>Teague</u>, and that Petitioner failed to satisfy § 2254(d)(1), Petitioner's Eighth Amendment claim regarding his prison sentence fails.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.   Petitioner's Objections [Doc. No. 30] to the Magistrate Judge's January 7, 2013, R & R [Doc. No. 29] are **OVERRULED in part** and **SUSTAINED in part**;

2.   The Court **ADOPTS in part**, and **DECLINES to adopt in part**, the Magistrate Judge's R & R [Doc. No. 29];

3.   Petitioner's Petition for a Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 [Doc. No. 1] is **DENIED**;

4.   Petitioner's claims are **DISMISSED with prejudice**;

5.   A Certificate of Appealability is **GRANTED** as to Petitioner's <u>Batson</u> claim (as stated in Ground 4 of his Petition); and

6.   A Certificate of Appealability is **GRANTED** as to Petitioner's Eighth Amendment challenge to his sentence (as stated in Ground 2 of his Petition).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 15, 2013                         s/Susan Richard Nelson
                                                 SUSAN RICHARD NELSON
                                                 United States District Judge